IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Central Marketing Associates, Inc.,                    :

                   Plaintiff              :        Civil Action 2:12-cv-01109

    v.                                             :

Robert E. Cresap d/b/a Robert Cresap          :        Magistrate Judge Abel
Trucking and Daily Underwriters of
America,                                       :

                Defendant

# ORDER

This matter is before the Court on defendants Robert E. Cresap d/b/a Robert

Cresap Trucking ("Cresap") and Daily Underwriters of America's ("DUOA") June 3,

2013 motion for partial summary judgment (doc. 18) and plaintiff Central Marketing

Associates' ("CMA") June 3, 2013 motion for partial summary judgment (doc. 20).

### I.    Allegations in the Complaint

The complaint pleads a claim under the Carmack Amendment for losses Central

Marketing Associates, Inc. suffered when perishable goods were allegedly damaged

during shipment. It makes the following allegations. The bill of lading advised Cresap

Trucking that the shipment comprised perishable food that required a temperature of

32 - 34 degrees at all times. The consignee of the shipment, Meijer of Tipp City, Ohio

rejected the entire shipment due to spoilage caused by temperature abuse. Investigation

revealed that due to a malfunction and breakdown the transport refrigeration unit permitted temperatures in excess of 34 degrees. Central Marketing Associates, Inc.'s loss was $53,308.

II.     **Arguments of the Parties**

        A.     **Defendants Robert E. Cresap d/b/a Robert Cresap Trucking and Daily Underwriters of America**

Defendants argue that the material facts of record clearly establish that the loss complained of was caused by something other than a mechanical breakdown of the refrigeration unit and outside the finite and clearly-expressed limitations of the cargo liability insurance policy's refrigeration breakdown endorsement. Defendants maintain that CMA has misapprehended the meaning and the coverage of the refrigeration breakdown endorsement

DUOA provided Cresap with a Motor Truck Cargo Liability Form, which was modified and supplemented by a Commercial Marine Refrigeration Breakdown Endorsement. The Endorsement provides that DUOA will pay for a loss to covered property due to spoilage resulting from malfunction or mechanical breakdown of a temperature control and/or refrigeration unit attached to any vehicle carrying the covered property.

Based on Cresap's report that the trailer chute had been knocked down, DUOA advised Cresap that the loss was not covered by the Endorsement because Thermo-King, the manufacturer of the refrigeration unit stated that a trailer chute is not

2

considered to be part of the refrigeration unit. The chute is sold separately as an accessory and is not needed to cool the contents of the trailer.

Defendants maintain that the refrigeration unit performed as expected and did not suffer from any malfunction or mechanical breakdown. Temperature recorders were inserted with the cherries in the trailer to record the temperature inside the trailer for the duration of the trip from Yakima, Washington to Tipp City, Ohio. One temperature recorder was placed at the front of the trailer and one at the rear. The recorder at the front of the trailer recorded temperatures between 32 and 34 degrees Fahrenheit. The unit at the back of the trailer recorded temperatures warmer than that.

Defendants contend that the trailer chute is an air handling system that is separate and distinct from an air chilling or a mechanical refrigeration unit. The chute and refrigeration unit provide separate and distinct roles. Defendants maintain that the chute is not part of the refrigeration unit, and a malfunction of the chute does not equate to a breakdown of the refrigeration unit.

Defendants argue that plaintiff has the burden of proving that the loss was caused by a peril insured against in the cargo policy. Defendants maintain that there is no evidence of a mechanical breakdown. The refrigeration unit performed flawlessly and continuously throughout the trip, maintaining the inside temperature of the front of the trailer at a constant 32-34 degrees Fahrenheit as required by the bill of lading and evidenced by the temperature recording. Cresap stated that he entered the trailer after the load was rejected and found that the clips holding the chute had broken. He

3

believes that chute was torn when the pallets of cherries were loaded onto the trailer. Cresap picked up a frozen load the day after the load of cherries was rejected, and delivered it to Iowa without any problems maintaining the temperature.

### B.    Plaintiff Central Marketing Associates

Plaintiff CMA argues that the Refrigeration Breakdown Endorsement provides coverage in the event of any "malfunction" or "mechanical breakdown" of a temperature control and/or refrigeration unit. In the alternative, plaintiff argues that the Motor Truck Cargo Liability Coverage Form covers any damage to cargo for any non-excluded cause, none of which are present here. The policy also contains Physical Damage Coverage, which provides coverage where the cause of loss involved a collision with an object such as a cargo loading device.

Plaintiff argues that according to industry experts, the chute is part of the refrigeration unit. A refrigeration unit is not complete without all temperature control elements properly functioning, including the chute.

Plaintiff maintains that the language of the contract does not support a denial of coverage. Defendant chose to delineate its loss coverage by using certain vague and undefined terms in addition to using the term "or", creating four possible losses. As a result, "malfunction" is not the same as "mechanical breakdown", and "temperature control" unit is not the same as "refrigeration unit." Plaintiff maintains that in order to defeat coverage DUOA must establish not only that the policy is capable of its

4

interpretation of the policy, but that its interpretation is the only one that can fairly be placed on the language in question.

Plaintiff further argues that the to the extent that DUOA attempts to argue that the chute was knocked off the system by an impact at the loading dock, this event would trigger coverage under the provision providing for "collision" coverage.

## III.    Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting the absence or presence of a genuine dispute must support that assertion by either "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; or "(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party may object that the cited material "cannot be presented in a form that would be admissible in evidence," and "[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56(c)(2); Fed. R. Civ. P. 56 advisory committee's note. If a party uses an affidavit or declaration to support or oppose a motion, such affidavit or

declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

While the court must consider the cited materials, it may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3). However, "[i]n considering a motion for summary judgment, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Revis v. Meldrum*, 489 F.3d 273, 279 (6th Cir. 2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id.*, 489 F.3d at 279–80 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).

## IV.    Discussion

The parties appear to agree on the basic facts underlying this case. Plaintiff CMA was hired by its customer, Meijer, to obtain transportation for a shipment of bing cherries from its point of origin in Yakima, Washington to its point of destination in Meijer, in Tipp City, Ohio. On July 2, 2012, defendant Cresap Trucking took possession of the shipment. Meijer issued a bill of lading that advised Cresap Trucking to maintain the cherries at a temperature of 32-34 degrees Fahrenheit. Upon delivery to its point of destination, Meijer of Tipp City, Ohio rejected the entire shipment due to spoilage caused by not being maintained at the proper temperature.

6

Cresap made a demand upon DUOA to provide insurance coverage in accordance with his insurance policy. On July 26, 2012, DUOA denied coverage on the basis that its Refrigeration Breakdown Endorsement did not include any loss associated with the chute.

Although Cresap speculated that the chute was damaged when the cherries were loaded, what damaged the chute and caused it to fail to function properly is unknown. The parties, however, agree, that the refrigeration unit in the front of the trailer mechanically functioned properly as evidenced by the temperature readings taken from the front of the trailer.

This case turns on the interpretation of the Commercial Marine Refrigeration Breakdown Endorsement, which provides in pertinent part:

> We will pay for "loss" to Covered Property when its due to spoilage, change in flavor, wet or dampness, being spotted, discolored, molded, rusted, frosted or rotten IF resulting from a malfunction or mechanical breakdown of a temperature control and/or refrigeration unit attached to any vehicle covering the Covered Property.

Doc. 20-11. Specifically, the Court must determine whether the failure of the chute to properly circulate the refrigerated air constitutes a "malfunction" of a "temperature control".

The interpretation of an insurance contract is a question of law. *GenCorp, Inc. v. American Int'l Underwriters*, 178 F.3d 804 (6th Cir. 1999). To determine the intent of the parties, the Court looks at the plain and ordinary meaning of the language in the contract to determine the intent of the parties. *Safeco Ins. Co. Of Am. v. White*, 122 Ohio

St. 3d 562, 567 (2009). Ambiguous provisions in an insurance contract must be construed against the insurer. *Id.*

Defendant argues that the separation of the chute from the trailer wall cannot constitute a malfunction or mechanical breakdown of the refrigeration unit. Plaintiff contends, that the chute is a "temperature control" unit that malfunctioned. What the Court must decide is whether the air flow system, i.e., the chute, is a temperature control unit. The chute does not provide refrigeration, rather it circulates the refrigerated air.

For mechanical refrigeration to properly maintain the desired temperature in the trailer, an air circulation system is necessary. *See* doc. 20-1 at PageID# 342; UNITED STATES DEPT. OF AGRICULTURE, *Protecting Perishable Foods During transport by Truck*, (Handbook No. 669, Sept, 1995) ("Air circulation is one of the most important factors in protecting refrigerated loads of perishable foods. Refrigeration capabilities are meaningless if the refrigerated air is not properly circulated to maintain product temperature."). Although defendants seem to contend that a temperature control unit and a refrigeration unit are synonymous, the contractual language does not support that interpretation. Here, coverage is provided for malfunctioning of a temperature control unit *and/or* a refrigeration unit. The use of "and/or" indicates that these two units are separate and distinct from one another and that one or both of those units could malfunction. The function of the chute is to control the temperature throughout

8

the trailer. Here, a malfunction of the chute resulted in the spoilage of the cherries. I conclude that this loss is covered under the Refrigeration Breakdown Endorsement.

## V.      Conclusion

For the reasons stated above, defendants Robert E. Cresap d/b/a Robert Cresap Trucking ("Cresap") and Daily Underwriters of America's ("DUOA") June 3, 2013 motion for partial summary judgment (doc. 18) is DENIED and plaintiff Central Marketing Associates' ("CMA") June 3, 2013 motion for partial summary judgment (doc. 20) is GRANTED.


                                        s/Mark R. Abel
                                        United States Magistrate Judge